IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| VERONICA BRIGHT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:16CV459 |
| | ) | |
| NANCY BERRYHILL, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Veronica Bright, brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act"), as amended (42 U.S.C. §§ 405(g) and 1383(c)(3)), to obtain review of a final decision of the Commissioner of Social Security[1] denying her claims for a Period of Disability ("POD"), Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") under Titles II and XVI of the Act. The Court has before it the certified administrative record and cross-motions for judgment. (Docket Entries 6, 9, 12.) For the reasons discussed below, it is recommended that Plaintiff's Motion for Judgment on the Pleadings be denied, Defendant's Motion for Judgment on the Pleadings be granted, and the Commissioner's final decision be affirmed.

---

[1] Nancy Berryhill recently became the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy Berryhill should be substituted for Carolyn W. Colvin as Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Act, 42 U.S.C. § 405(g).

## I. PROCEDURAL HISTORY

Plaintiff filed applications for a POD, DIB, and SSI in October of 2012, alleging a disability onset date of June 15, 2009. (Tr. 199-208.)[2] These applications were denied initially and upon reconsideration. (*Id.* at 116-17, 140-41.) Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"). (*Id.* at 160-61.) Plaintiff, her attorney, and a vocational expert ("VE") appeared at the hearing on June 26, 2014. (*Id.* at 44-95.) On December 22, 2014, the ALJ determined that Plaintiff was not disabled under the Act. (*Id.* at 27-38.) Plaintiff thereafter sought review of the ALJ's decision from the Appeals Council. (*Id.* at 6.) Also, new evidence was submitted on behalf of Plaintiff. (*Id.* at 10-15, 16-19.) On March 9, 2016, the Appeals Council denied Plaintiff's request for review, thereby making the ALJ's decision the Commissioner's final decision for purposes of review. (*Id.* at 1-4.)

## II. STANDARD OF REVIEW

The scope of judicial review of the Commissioner's final decision is specific and narrow. *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986). Review is limited to determining if there is substantial evidence in the record to support the Commissioner's decision. 42 U.S.C. § 405(g); *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). In reviewing for substantial evidence, the Court does not re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the

---

[2] Transcript citations refer to the Administrative Transcript of Record filed manually with the Commissioner's Answer. (Docket Entry 6.)

Commissioner. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). The issue before the Court, therefore, is not whether Plaintiff is disabled but whether the Commissioner's finding that she is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *Id.*

### III. THE ALJ'S DISCUSSION

The ALJ followed the five-step[3] sequential analysis set forth in 20 C.F.R. §§ 404.1520 and 416.920 to ascertain whether the claimant is disabled. *See Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of June 15, 2009. (Tr. 29.) The ALJ found the following severe impairments at step two: "severe degenerative disc disease; paroxysmal atrial fibrillation; anxiety; and depression." (*Id.*) At step three, the ALJ determined that Plaintiff did not have "an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments" found in Appendix 1. (*Id.* at 30.)

The ALJ next set forth Plaintiff's Residual Functional Capacity ("RFC") and found that she can perform a reduced range of light work in that she can "lift and/or carry up to 20 pounds occasionally and 10 pounds frequently," and she

---

[3] "The Commissioner uses a five-step process to evaluate disability claims." *Hancock v. Astrue*, 667 F.3d 470, 472-73 (4th Cir. 2012) (citing 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to his past relevant work; and (5) if not, could perform any other work in the national economy." *Id.* A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. *Id.*

can sit, stand, and/or walk up to six hours in an eight-hour workday. She requires a sit/stand option, with no more than two position changes in any hour while remaining on task; and, she further requires the use of a cane to change positions. She must avoid all exposure to hazards such as dangerous machinery and unprotected heights. [Plaintiff] can occasionally interact with coworkers, supervisors, and the public. She is further limited to simple, routine, and repetitive tasks (consistent with unskilled work).

(*Id.* at 32.) At the fourth step, the ALJ determined that Plaintiff could not perform any of her past relevant work. (*Id.* at 35-36.) Finally, at step five, the ALJ found that there were jobs existing in significant numbers in the national economy that Plaintiff could perform. (*Id.* at 36-38.) The ALJ thus concluded that Plaintiff was not disabled. (*Id.* at 38.)

## IV. ANALYSIS

Plaintiff asks this Court to reverse the decision of the Commissioner based on two arguments. First, Plaintiff asserts that the ALJ failed to account for Plaintiff's limitations in concentration, persistence and pace ("CPP") in setting out her RFC, which resulted in a flawed hypothetical presented to the VE regarding Plaintiff's ability to adjust to other work. (Docket Entry 10 at 12-16.) Second, Plaintiff contends that the Appeals Council erred in not considering two questionnaires that she submitted after the ALJ's decision: a Mental Residual Functional Capacity Assessment ("MRFCA") from Dr. Theresa Yuschok, dated February 2, 2015, and a Residual Functional Capacity Form ("RFCF") from Dr. Sunil Dogra, dated February 9, 2015. (*Id.* at 16-18.) For the following reasons, these arguments fail.

### 1. The ALJ sufficiently accounted for Plaintiff's moderate difficulties in CPP.

Plaintiff first argues that the ALJ failed to account for Plaintiff's limitations in CPP in

4

setting out her RFC, which resulted in a flawed hypothetical presented to the VE regarding Plaintiff's ability to adjust to other work. (Docket Entry 10 at 12-16.) Plaintiff relies upon the published opinion by the United States Court of Appeals for the Fourth Circuit in *Mascio v. Colvin*, 780 F.3d 632 (4th Cir. 2015). In *Mascio*, the Fourth Circuit determined that remand was appropriate for three distinct reasons, one of which is relevant to the analysis of this case. Specifically, the Fourth Circuit remanded in *Mascio* because the hypothetical the ALJ posed to the VE, and the corresponding RFC assessment, did not include any mental limitations other than unskilled work, despite the fact that, at step three of the sequential evaluation, the ALJ determined that the claimant had moderate difficulties in maintaining CPP. *Mascio*, 780 F.3d at 637-38.

The Fourth Circuit specifically held that it "agree[s] with other circuits that an ALJ does not account for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work." *Id.* at 638 (quoting *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011)) (internal quotation marks omitted). In so holding, the Fourth Circuit emphasized the distinction between the ability to perform simple tasks and the ability to stay on task, stating that "[o]nly the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." *Id.* Although the Fourth Circuit noted that the ALJ's error might have been cured by an explanation as to why moderate difficulties in CPP did not translate into a limitation in the claimant's RFC, it held that absent such an explanation, remand was necessary. *Id.*

Here, the ALJ determined at step three that Plaintiff had the following limitations in

CPP:

> With regard to concentration, persistence or pace, [Plaintiff] has *moderate* difficulties. The treatment records reflect the claimant generally had an organized thought process and followed commands without any complications (Exhibit 18F/53, 71, 95 and 20F/34). She also testified that she used to read and write all the time but now has no desire to do so as she has to be inspired. The [ALJ] finds the claimant has *mild* difficulties in concentration, persistence, or pace.

(Tr. 31 *referencing* Tr. 1051, 1069, 1093, 1243 (emphasis added).) It is not clear whether these limitations were considered mild or moderate; however, for the purposes of this recommendation, the Court will assume that the ALJ found that Plaintiff had moderate difficulties in CPP.[4] "Pursuant to *Mascio*, once an ALJ has made a step three finding that a claimant suffers from moderate difficulties in concentration, persistence, or pace, the ALJ must either include a corresponding limitation in her RFC assessment, or explain why no such

---

[4] Several district courts have distinguished "mild" versus "moderate" difficulties in CPP in determining whether *Mascio* is applicable. *See, e.g., Roberson v. Colvin*, No. 3:15-CV-570-MOC, 2016 WL 5844148, at *6 (W.D.N.C. Oct. 4, 2016) (unpublished) ("As this case concerns only 'mild difficulties,' it does not trigger the RFC discussion requirements of *Mascio per se*."); *Matthews v. Comm'r, Soc. Sec. Admin.*, No. CV SAG-15-3341, 2016 WL 4687635, at *4 (D. Md. Sept. 7, 2016) (unpublished) ("This Court has yet to extend *Mascio* to cover a finding of only mild limitations, and will not do so on this record."); *Griffis v. Colvin*, No. 2:12CV29-RLV, 2015 WL 4478821, at *6 (W.D.N.C. July 22, 2015) (unpublished) (citing the ALJ's finding that claimant suffered only mild limitations in CPP as the first of three factors distinguishing the case from *Mascio*). *But see Bachand v. Colvin*, No. 1:15CV00686, 2016 WL 4074148, at *7-8 (M.D.N.C. July 29, 2016) (unpublished) (considering *Mascio* implications where the ALJ found mild limitations in plaintiff's CPP); *Ashcraft v. Colvin*, No. 3:13-CV-417-RLV-DCK, 2015 WL 9304561, at *9 (W.D.N.C. Dec. 21, 2015) (unpublished) (rejecting the Commissioner's argument "that remand is not in order because this case involves 'mild' limitations"); *Reinhardt v. Colvin*, No. 3:14-CV-00488-MOC, 2015 WL 1756480, at *3 (W.D.N.C. Apr. 17, 2015) (unpublished) ("*Mascio* clearly imposes on the Commissioner a duty to explain why such mild mental health impairments found at step two do not translate into work-related limitations when plaintiff's RFC for work is considered.").

limitation is necessary." *See Talmo v. Comm'r, Soc. Sec.*, Civil Case No. ELH-14-2214, 2015 WL 2395108, at *3 (D. Md. May 19, 2015) (unpublished). Here, the ALJ did the latter.

More specifically, the ALJ provided a lengthy recitation of Plaintiff's complaints of mental impairments and her mental treatment, which is supported by substantial evidence:

> [Plaintiff] has complained of anxiety, panic attacks, depression, and insomnia; she has been prescribed psychotropic medications (*i.e.*, Xanax and Pristiq); and, she has participated in psychotherapy. However, [Plaintiff] has been repeatedly noted as alert and oriented with a cooperative attitude; appropriate mood and affect; and good insight, judgment, attention and memory. Her thought processes have been logical and coherent as well. Additionally, she has consistently denied hallucinations, delusions, and suicidal ideations. In fact, [Plaintiff's] condition has been generally described as stable. Essentially, during the period in question, she was often assigned a GAF score of 60, signifying only moderate symptoms or moderate difficulty in social, occupational, or school functioning (Exhibits 2F/34; 3F; 5F; 7F; 11F/97; 13F/30; and 20F/247, 254).
>
> As of April 2014, the treatment records show that [Plaintiff] regularly denied any changes in mood in addition to depression. Albeit, [Plaintiff's] sporadic episodes of anxiety and slight depression were noted to be caused by pain; recent pulmonary embolisms; and the stress of waiting on disability (Exhibits 20F/23, 28, 243, 293). Consequently, in August 2014, her psychiatrist provided a medical source statement indicating [Plaintiff] was able to handle her own finances; she was able to think clearly; and, her anxiety disorder was complicated by her medical illnesses (Exhibits 19F and 20F/31).

(Tr. 34-35 *referencing* Tr. 322, 376-96, 405-503, 508-09, 654, 802, 1209, 1232, 1237, 1240, 1452, 1456, 1463, 1502.) The ALJ also noted that although "[Plaintiff] further alleged she was unable to work due to her severe mental impairments," this "allegation is also inconsistent with the evidence contained in [Plaintiff's] medical records, which reflects she is able to perform light,

7

unskilled work, as defined in the residual functional capacity herein." (Tr. 34.)

Several courts have found a remand pursuant to *Mascio* unnecessary where an explanation by the ALJ is explicitly supported by substantial evidence. *See, e.g., Ledbetter v. Colvin*, No. 15-CV-714, 2016 WL 1258473, at *6-7 (D. Md. Mar. 31, 2016) (unpublished) (refusing to remand under *Mascio* because the ALJ's explanation was supported by substantial evidence in that it discussed plaintiff's "ability to successfully function as a full-time college level student" as well as his efforts in seeking employment and utilizing vocational services (emphasis omitted)), *report and recommendation adopted*, No. 2:15-CV-32-D, 2016 WL 4581329 (E.D.N.C. Sept. 1, 2016); *Horning v. Colvin*, No. 3:14-CV-722-RJC, 2016 WL 1123103, at *4 & n.2 (W.D.N.C. Mar. 21, 2016) (unpublished) (quoting *Winschel*, 631 F.3d at 1180) (finding that "the ALJ's discussion of [p]laintiff's mental limitations and the resulting RFC finding [were] supported by substantial evidence" in that the ALJ assessed plaintiff's testimony, treatment records, and the opinions of State agency medical consultants); *Gautreau v. Colvin*, No. 2:15-CV-81, 2016 WL 1314314, at *9 (E.D. Va. Feb. 26, 2016) (unpublished) ("As shown by the ALJ's detailed analysis of the evidence in the medical record, his RFC not only considered all of the evidence—both physical and mental symptoms—but also properly accounted for any impairments supported by the record."), *report and recommendation adopted*, No. 2:15-CV-81, 2016 WL 1298122 (E.D. Va. Mar. 31, 2016), *aff'd sub nom. Gautreau v. Berryhill*, No. 16-1628, 2017 WL 1423297 (4th Cir. Apr. 21, 2017). As this Court has noted, a mere recitation of the claimant's treatment history will not suffice; rather, the ALJ must "build a logical bridge between the evidence of record and her conclusions." *Martin v. Berryhill*, No. 1:16-CV-171,

8

2017 WL 728234, at *4-6 (M.D.N.C. Feb. 23, 2017) (unpublished) (citing *Mascio*, 780 F.3d at 638); *see also* Social Security Ruling ("SSR") 96-8p, Assessing Residual Functional Capacity in Initial Claims, 1996 WL 374184, at *7 (July 2, 1996) ("The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).").

Here, the above mental RFC explanation thoroughly justifies the ALJ's assertion that Plaintiff was able to perform light, unskilled work by pointing to record evidence of—among other things—Plaintiff's stable mood, clear thinking, and ability to handle her own finances. (Tr. 34-35; *see also* Tr. 802, 1209, 1237, 1240, 1456.) It is a narrative discussion that builds a "logical bridge between the evidence of record and [the ALJ's] conclusions." *Martin*, 2017 WL 728234 at *6 (citing *Mascio*, 780 F.3d at 638); *see also Pearce*, 2016 WL 4574446 at *5 (citing *Ledbetter*, 2016 WL 1258473 at *6) ("[E]ven if the RFC determination and hypothetical questions to the VE did not satisfy the requirements of *Mascio*, ALJ Harper offered a[n] explanation for failing to find that [plaintiff] was further restricted."); *Horning*, 2016 WL 1123103 at *4 & n.2 (quoting *Winschel*, 631 F.3d at 1180); *Gautreau*, 2016 WL 1314314 at *7-8. Thus, the ALJ's explanation sufficiently accounts for Plaintiff's moderate difficulties in CPP and supports the reasoning that no further limitations in the RFC were necessary.

Plaintiff's argument to the contrary is unpersuasive. Indeed, Plaintiff highlights the holding in *Mascio* that an ALJ "does not account for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to [SRRTs] or unskilled work."

9

780 F.3d 632 at 638 (quotation omitted). However, she fails to acknowledge that an RFC limiting a claimant to only SRRTs—despite the claimant's moderate difficulties in CPP—can survive *Mascio* as long as there is a sufficient explanation as to why the ALJ found that no further limitations were necessary. *Id.*; *Talmo*, 2015 WL 2395108 at *3. In the present case, as discussed above, there is such an explanation. The undersigned thus finds that there is no cause for remand pursuant to *Mascio*.

### 2. The Appeals Council did not err in refusing to consider the two questionnaires Plaintiff submitted following the ALJ's decision.

Next, Plaintiff contends that the ALJ's decision should be reversed for further evaluation of the "new and material evidence submitted to the Appeals Council but not weighed by that body." (Dock Entry 10 at 16.) More specifically, Plaintiff contends that the Appeals Council erred in not considering a MRFCA from Dr. Theresa Yuschok, dated February 2, 2015, and a RFCF from Dr. Sunil Dogra, dated February 9, 2015. (Docket Entry 10 at 16-18.) The administrative scheme for handling Social Security claims permits the claimant to offer evidence in support of the claim initially to the ALJ. Once the ALJ renders a decision, the claimant is permitted to submit additional evidence to the Appeals Council as part of the process for requesting review of an adverse ALJ decision, and the Appeals Council must consider the additional evidence if it "is (a) new, (b) material, and (c) relates to the period on or before the date of the ALJ's decision." *Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 953 F.2d 93, 95–96 (4th Cir. 1991) (citation omitted); *see also* 20 C.F.R. §§ 404.970(a)(5), 416.1470(a)(5). "Evidence is new 'if it is not duplicative or cumulative' and is material if there

is 'a reasonable possibility that the new evidence would have changed the outcome.'" *Meyer v. Astrue*, 662 F.3d 700, 705 (4th Cir. 2011) (quoting *Wilkins*, 953 F.2d at 96).

"[T]he Appeals Council must consider new and material evidence relating to that period prior to the ALJ's decision in determining whether to grant review, even though it may ultimately decline review." *Wilkins*, 953 F.2d at 95. If the additional evidence fails to meet any of the above three criteria (i.e., it is not new, or not material, or does not relate back to the period on or before the ALJ's decision), then the Appeals Council need not consider it in deciding whether to grant review. *See* 20 C.F.R. §§ 404.970(a)(5), 416.1470(a)(5). Moreover, when the Appeals Council decides to deny review, it need not provide any explanation of its reasoning. *Meyer*, 662 F.3d at 705. "In evaluating whether remand is necessary, we view the administrative record as a whole, including the new evidence, to determine whether substantial evidence supports the Commissioner's decision." *Parham v. Comm'r of Soc. Sec.*, 627 F. App'x 233, 233 (4th Cir. 2015) (unpublished) (citing *Wilkins*, 953 F.2d at 96).

Here, the Appeals Council "looked at" Plaintiff's additional evidence, determined that the information was about a "later time," and therefore found that it did not affect the ALJ's decision. (Tr. 2, 10-19.) The Appeals Council therefore found no basis for granting Plaintiff's request for review and did not receive the additional information into the record.[5] (*Id.* at 1,

---

[5] Where, as here, the Appeals Council declines to accept additional evidence, some courts in the Fourth Circuit consider an appeal of that issue under "sentence six" of 42 U.S.C. § 405(g), rather than "sentence four." *See, e.g., Barts v. Colvin*, No. 4:13-CV-23, 2014 WL 3661097, *9 n.6 (W.D.Va. July 22, 2014) (unpublished) (collecting cases). As explained above, the sentence four factors are that the evidence must be (a) new; (b) material; and (c) relate to the period on or before the date of the ALJ's decision. *Wilkins*, 953 F.2d at 95-96. The sentence six factors are that the evidence (a) must be relevant to the determination of disability at the time the application was initially filed; (b) the evidence

11

6.) Despite Plaintiff's arguments to the contrary, the Appeals Council did not err in denying review because neither questionnaire meets all three of the above requirements (newness, materiality, and relation back) such that they would have changed the outcome of Plaintiff's disability determination. *Meyer*, 662 F.3d at 705.

### A. Dr. Yuschok's MRFCA

Dr. Yuschok's MRCFA is a questionnaire, dated February 5, 2015, which indicates that she has been treating Plaintiff monthly since March 2013. (Tr. 16.) The document further notes Plaintiff's diagnoses, GAF scores, and Plaintiff's physical conditions which impact Plaintiff's mental impairments. (*Id.*) Dr. Yuschok then provides a personal assessment of Plaintiff, rating her functioning level in numerous categories. (*Id.* at 17-19.) Dr. Yuschok concludes with several "yes" or "no" responses as to Plaintiff's ability to work and manage finances. (*Id.* at 19.)

Based upon the contents of the MRCFA, it is unclear whether the limitations referenced in Dr. Yuschok's MRFCA relate back to the relevant period in this case. However,

---

must be material to the extent that the Commissioner's decision might reasonably have been different had the new evidence been before her; (c) there must be good cause as to why the claimant failed to submit the evidence when the claim was before the Commissioner; and (d) the claimant must make at least a general showing of the nature of the newly submitted evidence to the reviewing court. *See, e.g., Doll–Carpenter v. Comm'r*, 4:11-CV-28, 2012 WL 5464956, at *4 (W.D.Va. May 7, 2012) (unpublished) (citing *Miller v. Barnhart*, 64 Fed. App'x. 858, 859 (4th Cir. 2003). The Court need not resolve the issue of which sentence applies here because, given their overlapping nature—particularly with respect to materiality—the result remains the same. *Barts*, 2014 WL 3661097, at *9 n.6 (unpublished) (finding that "the additional evidence submitted by [plaintiff] to the Appeals Council [was] not material, a standard applicable under both sentence four and sentence six," thus the court "need not further address which sentence would apply" had the case resulted in remand).

even if Dr. Yuschok's February 2015 opinion relates back, the Appeals Council's error is harmless as Plaintiff cannot demonstrate that the evidence is new or material. As a preliminary matter, the Court notes that Dr. Yuschok circled "no" in response to the question "Do you believe that your patient can work on a regular and sustained basis in light of his or her mental impairment?" (*Id.* at 19.) However, this conclusory statement "is not a basis for remand, as [it] is not a decision to be made by a medical provider." *Boren v. Astrue*, No. CIV.A. 9:11-0520-TLW, 2012 WL 4344066, at *7 (D.S.C. May 22, 2012) (unpublished) (citing *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1029 (10th Cir. 1994)) (internal quotation marks omitted), *report and recommendation adopted*, No. CIV.A. 9:11-520-TLW, 2012 WL 4341807 (D.S.C. Sept. 21, 2012); *see also* 20 C.F.R. §§ 404.1529(d)(3), 416.927(d)(3).

Much of the rest of Dr. Yuschok's MRFCA is not new, and the parts that might be considered new are not material. First, "[e]vidence is new 'if it is not duplicative or cumulative.'" *Meyer*, 662 F.3d at 705 (quoting *Wilkins*, 953 F.2d at 96); *see also Saunders v. Colvin*, No. 5:12-CV-775-D, 2014 WL 1057024, at *7 (E.D.N.C. Mar. 17, 2014) (unpublished) (emphasizing that a medical questionnaire was not new because the responses in the questionnaire were based off of the doctor's previous treatment of the plaintiff, "which denote[d] the same diagnosis of major depressive disorder and other similar complaints"); *Boren*, 2012 WL 4344066 at *7 (noting that documents submitted to the Appeals Council "fail[ed] to reveal any additional diagnosis or medical findings that were not already considered by the ALJ"). With respect to mental impairments, this Court has previously stated that new evidence must "offer additional insight into Plaintiff's mental status." *Belton v. Colvin*, No.

13

1:14-CV-777, 2015 WL 5023087, at *10 (M.D.N.C. Aug. 24, 2015) (unpublished) (finding that a medical source statement was not new because the record already contained a medical source statement completed by the same psychiatrist), *report and recommendation adopted*, No. 1:14-CV-777, 2015 WL 5712732 (M.D.N.C. Sept. 29, 2015).

Here, much of the MRFCA is duplicative or cumulative of evidence already in the record. The MRFCA includes nearly the same observations as a medical source statement completed by Dr. Yuschock on July 9, 2014 and later reproduced in progress notes from August 18, 2014. (Tr. 16, 19, 1209, 1240.) The ALJ gave the July 9, 2014, medical source statement some weight. (*Id.* at 35.) In it, Dr. Yuschok wrote that she has been treating Plaintiff for "Major Depression and Anxiety Disorder" since December 4, 2013. (*Id.* at 1209, 1240.) Dr. Yuschok further noted that Plaintiff "can handle her own finances" and "is able to think clearly, but anxiety and mood interfere with sleep." (*Id.*) Dr. Yuschok also indicated that Plaintiff's "anxiety disorder is complicated by her significant medical illnesses." (*Id.*) Other treatment records reflect that Plaintiff complained of panic attacks, although her description of the panic attacks was "somewhat uncertain, given that she does not always experience a subjective sense of fear or worries when having the episodes." (*Id.* at 735; *see also* 756.) It was thus unclear "whether the panic episodes are actually cardiac in nature." (*Id.* at 735.) Similarly, in the MRFCA, Dr. Yuschok wrote that Plaintiff's mental health diagnoses are "Major Depression, recurrent, Panic attacks, Anxiety." (*Id.* at 16.) She circled "yes" in response to the following two questions: "Do you believe the patient can manage his or her own funds?" and "Are you aware of any physical medical condition that may contribute to the patient's

14

mental impairments?" (*Id.* at 16, 19.) In response to this last question, Dr. Yuschok mentioned some of Plaintiff's physical health problems and noted that they "contributed to [her] severe anxiety." (*Id.* at 16.)

Moreover, in the portion of the questionnaire that asked Dr. Yuschok to "circle the word that best describes [Plaintiff's] functioning," she was instructed to base her answers on her personal assessment of Plaintiff. (*Id.* at 17.) These questionnaire assessments—and the comments Dr. Yuschok wrote next to some of them—seem to be largely duplicative and cumulative of other treatment records. (*Id.* at 17-19, 764, 770, 802, 1237.) For example, the ALJ cited to progress notes indicating that Plaintiff "was cooperative throughout the assessment"; "[t]ired, worried about her disability"; and "'down, stressed'" but with an appropriate affect. (*Id.* at 35, 802, 1237.) Other progress notes indicate that Plaintiff was friendly and cooperative with goal-directed speech; that she followed instructions with no difficulties; and that she "prefers to stay in bed all day long." (*Id.* at 764, 770, 1069, 1093.) Similarly, in the MRFCA—next to "Not Ratable" limitations in "ability to remember locations and work-like procedures"— Dr. Yuschok wrote "[s]he has not gotten lost at all. She followed written instructions." (*Id.* at 17.) Next to "Marked" limitations in "ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances," Dr. Yuschok wrote "on time for my appt, but usually in bed all day." (*Id.*) The above responses and comments from the questionnaire, among others, are duplicative or cumulative.

Second, to the extent that portions of the MRFCA might be considered new, they are not material. Additional evidence is material if there is "'a reasonable possibility that [it] would

15

have changed the outcome.'" *Meyer*, 662 F.3d at 705 (quoting *Wilkins*, 953 F.2d at 96). When limitations described in additional evidence submitted to the Appeals Council are significantly more severe and inconsistent with those described in the evidence of record, this Court and others have held that there is no reasonable possibility that the additional evidence would have changed the ALJ's decision. *See, e.g., Belton*, 2015 WL 5023087 at *10 (holding that a doctor's report was not material because "[t]he severity of the limitations that were identified in [the doctor's] questionnaire was inconsistent with other evidence in the record"); *Saunders*, 2014 WL 1057024 at *7 (citing *Williams v. Colvin*, No. 5:12-CV-529-BO, 2013 WL 4806965, at *3 (E.D.N.C. Sept. 9, 2013) (unpublished) (holding that a doctor's medical questionnaire was not material because the severity of the limitations described therein was inconsistent with the doctor's "own treatment notes and other evidence in the record"); *Williams*, 2013 WL 4806965 at *3 ("Dr. Singh's report is not material because the severity of the limitations he describes is inconsistent with his treatment notes and the other evidence of record.").

Here, the additional limitations described in the MRFCA are much more severe than those described in Dr. Yuschok's medical source statement and the rest of the record evidence; these inconsistencies indicate that there is no reasonable possibility that the "questionnaire responses would have changed the ALJ's determination." *Saunders*, 2014 WL 1057024 at *7 (citing *Williams*, 2013 WL 4806965 at *3). For example, in the MRFCA Dr. Yuschok noted "crying spells, panic attacks, and hallucinations of voices and noise" next to her finding of "Extreme" limitations in Plaintiff's "ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent

pace without an unreasonable number of and length of rest periods." (Tr. 18.) Additionally, Dr. Yuschok wrote "panic attacks daily" next to another finding of "Extreme" limitations in Plaintiff's "ability to tolerate normal levels of stress." (*Id.* at 19.) In contrast, Dr. Yuschok's prior medical source statement made no mention of panic attacks or hallucinations. (*Id.* at 1209.) While Dr. Yuschok opined that Plaintiff's "anxiety and mood interfere with sleep, dealing with people especially in crowds, increased worry and hypervigilance of her bodily symptoms," she also noted that Plaintiff can "handle her own finances," "is able to think clearly," and would soon begin an eight-week therapy group for depression. (*Id.*) The limitations found in the MRFCA are considerably more serious than this.

There are also noteworthy differences between the above portions of the MRFCA and the rest of the record evidence. For example, the treatment notes frequently indicate the following: Plaintiff was calm, cooperative, and friendly, casually and neatly dressed, and fully oriented with normal speech and fair to good eye contact. (*Id.* at 587, 742, 758, 764, 770, 874, 877, 945, 1191, 1196, 1202, 1264.) Plaintiff also had logical and goal-directed thought processes, no suicidal or homicidal ideation, poor to good insight, fair to intact judgment, normal memory, and no hallucinations, paranoia, or delusions. (*Id.*) Moreover, she consistently followed commands without any difficulty. (*Id.* at 463, 484, 535, 909, 1026, 1051, 1069, 1270, 1299, 1317, 1353, 1482.) Plaintiff occasionally complained of panic attacks; however, as previously noted, due to her lack of a subjective sense of fear during the episodes, it was unclear whether they were actually cardiac-related. (*Id.* at 735; *see also* 756.) Finally, Plaintiff reported that she cared for her young son, engaged in housework and cooking, went

17

to church on Sundays, and was seeking employment in January 2014. (*Id.* at 723-24, 734, 763-64, 1190, 1201, 1437.) The Court also notes that the opinions of the non-examining State agency medical consultants—to which the ALJ gave significant weight (Tr. 35)—unanimously found that Plaintiff had "Non Severe" Anxiety Disorders. (*Id.* at 100-01, 123, 134.) In sum, the increased limitations found in the MRFCA are inconsistent with the rest of the record evidence. As a result, those portions of the MRFCA are not material because they did not have a reasonable possibility of affecting the ALJ's decision. Further—as previously discussed—the rest of Dr. Yuschok's MRFCA is not new because it is duplicative or cumulative of other record evidence. The undersigned thus finds that Plaintiff's argument as to Dr. Yuschok's MRFCA fails.

**B. Dr. Dogra's RFCF**

Plaintiff next argues that the Appeals Council erred in refusing to consider Dr. Dogra's RFCF. (Docket Entry 10 at 17-18.) Here, the undersigned disagrees because the RFCF does not relate back, and it is not material. First, it does not relate back to the period prior to the ALJ's decision. While "the date of a report is not necessarily dispositive," it cannot be assumed that a report "relate[s] to the relevant period given contrary evidence." *Belton*, 2015 WL 5023087 at *10 (citing *Bird v. Comm'r of Soc. Sec.*, 699 F.3d 337, 341 (4th Cir. 2012)) (noting that a report did not seem to relate back, even though the reporting doctor opined that the "symptoms and disabilities applied since at least [the alleged disability onset date]"). Here, unlike the MRFCA, which indicated that Dr. Yuschok began treating Plaintiff in March 2013 (Tr. 16), Dr. Dogra's RFCF does not indicate when his treatment of Plaintiff began. (*Id.* at

18

10-15.) In fact, the only date on the whole document—besides Plaintiff's date of birth—is the date the report was completed: February 9, 2015. (*Id.* at 10, 15.) The ALJ's decision predates this report by nearly seven weeks. (*Id.* at 38.) While the fact that the RFCF is dated after the ALJ's decision is not itself dispositive, this Court will not assume that the RFCF nonetheless relates back when faced with significant evidence to the contrary. There is no evidence of a treating relationship between Dr. Dogra and Plaintiff anywhere in the record, and the RFCF contains mainly present tense ("patient cannot drive long distance") and future tense language ("[d]isease progression will lead to decreased physical function"). (*Id.* at 11, 13.) Moreover, despite being prompted by the questionnaire, Dr. Dogra opted not to explain how his experience with Plaintiff informed his belief that she could not resume her previous work. (*Id.* at 14.) Finally, even Plaintiff's attorney admits "it is unclear when the treatment relationship between Dr. Dogra and [Plaintiff] began." (Docket Entry 10 at 17.) As a result, Dr. Dogra's RFCF does not relate back to the relevant period on or before the ALJ's decision.

Even if Dr. Dogra's RFCF did relate back to the relevant time period, it is not material. As previously stated, additional evidence is material if there is "'a reasonable possibility that [it] would have changed the outcome.'" *Meyer*, 662 F.3d at 705 (quoting *Wilkins*, 953 F.2d at 96). Here, there is not a reasonable possibility that the RFCF would have changed the ALJ's decision. Similar to Dr. Yuschok's MRFCA, the limitations described in Dr. Dogra's RFCF are much more severe than those reflected by the record as a whole. For example, Dr. Dogra opined that, due to Plaintiff's severe pain, she can only stand and/or sit "for 15-20 minutes" at a time, must lie down during the day, and can walk no more than twenty feet without

19

stopping. (Tr. 11-12.) By contrast, the ALJ noted that Plaintiff was regularly ambulatory and in no acute distress, which is supported by the record. (*Id.* at 34; *see also id.* at 479, 641, 704, 1071.) Other records show that, through May 2014, Plaintiff had no swelling or tenderness in her back, and mild or no swelling or tenderness in her extremities. (*See, e.g., id.* at 457, 902, 917.) "As of September 2014, [Plaintiff] was advised by her provider that she could participate in physical activity as tolerated." (*Id.* at 34 *referencing* Tr. 1504.) Compared to the rest of the record evidence, the limitations in the RFCF are disproportionately severe. Having concluded that there is no reasonable probability that Dr. Dogra's RFCF would have changed the outcome of the ALJ's decision, Plaintiff's argument fails.

## V. CONCLUSION

For the reasons discussed above, this Court **RECOMMENDS** that Plaintiff's Motion for Judgment on the Pleadings (Docket Entry 9) be **DENIED**, Defendant's Motion for Judgment on the Pleadings (Docket Entry 12) be **GRANTED**, and the final decision of the Commissioner be affirmed.

_____
Joe L. Webster
United States Magistrate Judge

June 21, 2017
Durham, North Carolina